IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**LARRY DEAN MILLER,**

**Plaintiff,**

**v.**

**UNION PACIFIC RAILROAD COMPANY,**

No. 15-cv-66-DRH-DGW

**Defendant.**

## MEMORANDUM & ORDER

**HERNDON, District Judge:**

### I.   Introduction

Before the Court is a motion for summary judgment filed by defendant Union Pacific Railroad Company ("Union Pacific") (Doc. 27). Union Pacific seeks judgment that it is not liable under the Federal Employers' Liability Act ("FELA") for any of Plaintiff Larry Dean Miller's ("Miller") injuries. Miller opposes defendants' motion (Doc. 31). For the following reasons, defendants' motion is **GRANTED.**[1]

### II.   Background

On January 21, 2015, plaintiff Larry Dean Miller, filed the underlying FELA action against Union Pacific. In his complaint, Miller claims that Union Pacific was negligent for (a) failing to provide plaintiff with a safe place to work; (b) failing to

---

[1] The Court notes that Miller is now proceeding as a *pro se* plaintiff. However, at the time the motion and response were filed, Miller was represented by counsel. Accordingly, the Court need not provide notice of Rule 56(e), nor provide an explanation of the rule at this time.

provide plaintiff with safe methods to perform his work; (c) failing to provide plaintiff with sufficient manpower; (d) failing to provide plaintiff with the proper tools and equipment; (e) requiring plaintiff to work in awkward positions; and (f) allowing these unsafe practices to become common practice (Doc. 2).

Miller alleges that on September 15, 2014, while employed by Union Pacific, he sustained certain physical injuries when he fell out of the bed of his pickup truck during an attempt to retrieve a gas-powered impact wrench stored in the truck bed.[2] The truck involved in the alleged incident was assigned to Miller in 2013 by Union Pacific. The truck was brand new at the time Miller received it (Doc. 28-1, pg. 4) and he regularly drove the truck home at night.

While retrieving the impact wrench on the date of the accident, Miller slipped in spilled switch lubricator and fell out of the truck. (Doc. 28-1, pg. 8). Miller testified that he used the same truck the day before, and did not see the switch lubricator spill (*Id.*). He testified that no one at Union Pacific knew the lubricant spilled in the bed of the truck, and there were no witnesses to the alleged incident. (*Id.* at 6-7). Miller, himself, was unsure when the lubricant spilled. (*Id.* at 23).

Following the close of discovery in this matter, defendants filed the pending motion for summary judgment (Doc. 27). Defendants move for summary judgment alleging that "plaintiff failed to provide any evidence that Union Pacific

---

[2] Miller's employment at the time of the alleged injury is not disputed.

was negligent or caused his alleged injuries" (Doc. 28). Miller's attorney then filed his response opposing the motion (Doc. 31).

### III. Summary Judgment Standard

Summary judgment is proper when the pleadings, discovery, and disclosures establish that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Winsley v. Cook Cnty.,* 563 F.3d 598, 602–03 (7th Cir. 2009); Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Indiana,* 259 F.3d 619, 625 (7th Cir. 2001); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In assessing a summary judgment motion, the district court must view the facts in the light most favorable to, and draws all reasonable inferences in favor of, the non-movant. *Scott v. Harris*, 550 U.S. 372 (2007); *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008); *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011).

The party seeking summary judgment bears the initial burden of establishing the absence of factual issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 323). In response, the non-moving party may not rest on bare pleadings alone, but instead must highlight specific material facts to show the

existence of a genuine issue to be resolved at trial. *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). The Court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *McGrath v. Gillis,* 44 F.3d 567, 569 (7th Cir. 1995).

### IV. Law and Application

In this case, Miller alleges negligence on the part of Union Pacific pursuant to the Federal Employers' Liability Act ("FELA") based on his September 15, 2014 fall from the bed of his work truck. FELA affords a "broad federal tort remedy for railroad workers injured on the job." *Crompton v. BNSF Ry. Co.*, 745 F.3d 292, 296 (7th Cir. 2014), citing *Williams v. Nat'l R.R. Passenger Corp.*, 161 F.3d 1059, 1061 (7th Cir. 1998). Union Pacific argues that Miller failed to provide sufficient evidence that Union Pacific's negligence caused Miller's injury.

#### a. FELA, 45 U.S.C. § 51.

Under FELA, a railroad employer must provide its employees with a reasonably safe place to work. *Holbrook*, 414 F.3d at 742; *Williams,* 161 F.3d at 1061. More specifically, the FELA statute states that common rail carriers "shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce … for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other

equipment." 45 U.S.C. § 51. However, FELA does not "render a railroad an insurer of its employees." *Holbrook*, 414 F.3d at 742 (quoting *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994)).

To recover under FELA, a plaintiff must prove "the common law elements of negligence, including foreseeability, duty, breach, and causation," *Fulk v. Illinois Cent. R.R. Co.*, 22 F.3d 120, 124 (7th Cir.1994); see also *Crompton*, 745 F.3d at 296. But a "relaxed standard of causation applies under FELA." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 131 S. Ct. 2630, 180 L. Ed. 2d 637 (2011). That is, railroads are liable if their negligence "played any part, even the slightest, in producing the injury." *McBride*, 564 U.S. 685 at 687 citing *Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500, 506 (1957). More simply put, a FELA plaintiff must "proffer some evidence of the defendant's negligence in order to survive summary judgment." *Holbrook v. Norfolk S. Ry. Co.*, 414 F.3d 739, 742 (7th Cir. 2005); *Lynch v. Northeast Regional Commuter R.R. Corp.*, 700 F.3d 906, 911 (7th Cir. 2012). Here, Miller cannot rely on speculation to take the place of proof. *Moore v. Chesapeake & O. R. Co.*, 340 U.S. 573, 578, (1951).

To establish a breach of that duty, the plaintiff must show circumstances which a reasonable person would foresee as creating a potential for harm. *Williams*, 161 F.3d at 1062. In addition, because liability is limited to those dangers that are reasonably foreseeable, the plaintiff must show that the employer had actual or constructive notice of the condition. *Id.* 1062-63. Finally, the

plaintiff must show that the breach caused (but only in the minimal sense required under FELA) the injury. *Id*.

### b. Miller has not created a genuine issue as to Union Pacific's negligence under FELA.

Union Pacific argues that Miller has not met his modest burden of coming forward with any evidence showing that Union Pacific was somehow negligent in allowing Miller to become injured. However, Miller contends that it was Union Pacific's negligence in providing an unsafe mobile workplace that caused his fall; specifically, Miller claims that Union Pacific created unsafe conditions within the truck by requiring him to carry switch lubricant sprayers.

> **Miller**: We had little sprayers that we sprayed it on the switches with. And from them tools getting beat around back there, the top of it, I suppose, it come unscrewed."
> …
> **Q:** Okay. So had you ever seen that switch lube leak out before?
> **Miller:** Absolutely.
> **Q:** Okay.
> **Miller** Yeah.
> **Q**: So what had you done to correct that situation?
> **Miller:** Tighten it up and put it up, you know.
> …
> **Miller:** I think if they would have got us proper containers or a different dispensing method. I believe Union Pacific is at fault for that oil being there.
> **Q**: Okay. So you think Union Pacific is responsible because of, what?
> **Miller:** The dispensing method. You know, there's a million different ways. And just -- I don't believe that I should have had to have been carrying switch lube with me.

(Doc. 28-1, pg. 10). As to the argument regarding alleged negligence simply by requiring switch lubricant be carried on the truck, Miller fails. The basis for an

employer's liability under FELA is its negligence, not the mere fact that injuries occur. *Gottshall*, 512 U.S. at 543. Miller admitted that it was necessary to lubricate switches as part of his job.

> **Q**: Okay. I know you told me that you didn't think it was necessary
> **Miller:** Yeah.
> **Q:** -- to have switch lube with you.
> **Miller:** With me. Yeah.
> **Q**: But you also recognize that -- the need to have switches lubricated.
> **Miller:** Lubricated. Yeah.

(Doc. 28-1, pg. 24). Additionally, during his deposition, Miller further discredits his argument by proposing an alternative method for carrying the lubricant that would be a "godsend" ( *Id*. at 25). Although he believes that it was unnecessary to carry switch lube, he also recognizes that there is a need to lubricate the switches, and without the lubricant, his job would not get done (*Id*. at 26).

As to the argument that Union Pacific should offer an alternate method in which to carry the lubricant to prevent leaking, the Court points to the fact that Miller admitted that he, alone, controlled his truck and its contents. Union Pacific alleges that under the circumstances surrounding Miller's injury, the truck, tool placement, and maintenance of the truck were within Miller's own control. Union Pacific places the responsibility of maintaining company-owned vehicles on the employees driving them. This includes how and where the truck lubricator was stored.

Union Pacific states that it did not have actual or constructive notice of the spilled lubricant on Miller's truck that allegedly caused his injury because Miller retained possession of the truck and was responsible for its contents and any

truck maintenance. Miller testified that as a track inspector, he drove his truck home each night and had exclusive possession of the vehicle (Doc. 28-1, pg. 3). Miller was required to inspect his truck, clean up spills, and take it in for service in the event that anything broke or became defective (*Id.*, pg. 24). Miller decided where each tool and other work-related items were placed on the truck and it was his responsibility to inspect the truck and to clean up any spills (*Id.* at 10). Miller stated that he failed to clean up the spilled lubricant because it was clear and he could not see it.

Miller testified that no one at Union Pacific was aware of the switch lubricant spill on the truck bed prior to his accident. This is especially true given that Miller retained possession of the truck each day and was required to do his own inspections of the truck, as mentioned above. It is clear from the depositions that Union Pacific did not have an opportunity to inspect the truck in order to detect the spilled lubricant, and furthermore, they designated that it was the truck operator's responsibility to inspect the truck regularly, store the necessary tools, and clean up spills, thus failing to meet constructive knowledge. It would be one thing if another employee outfitted the truck or told Miller where to store everything, but that is not the case here. Miller was permitted to store the impact wrench, lubricant, and other tools in any location that he saw fit.

Miller also testified that he carried three buckets containing bolts, spikes, and wrenches on his truck. It appears that based on his control of the vehicle and the organization of its contents, Miller had the opportunity to store the switch

lubricator in any container that he chose, similar to how he stored the bolts, spikes, and wrenches. No evidence indicated that company policy or another employee maintained the lubricator or told Miller how and where to store it. Miller was permitted to store the lubricant in a location and a container where it would not spill onto the bed of the truck. However, he did not do so.

Furthermore, Miller's placement of the impact wrench on his vehicle was a key factor in Miller's injury. At the time of his accident, Miller was standing in the back of his truck attempting to retrieve an impact wrench that weighed between 60 and 100 pounds. Given that the truck was used by Miller alone, he alone decided where the impact wrench would be stored on his truck bed, along with all other necessary tools, including the lubricator. During his deposition, Miller stated:

> **Miller**: I tried to service my tools and stuff before I get out on the track. That way the truck's not sitting up so high and I'm not struggling to get tools and things of that nature out. So I went to get my gas-powered impact out to fill it up with gasoline. And it was in the back of the truck. And I got up in the truck to get it because it was in the front of the bed. And after I climbed in the truck, I got ahold of it.
> …
> **Miller:** Once I got in the back, I grabbed ahold of the tool. Was going to spin around to come out. And had slipped in some switch lube and – some switch lubrication. And had come out of the back of the truck with a tool in my hand.
> …
> **Miller:** Landing on my rear end and elbow, shoulder area with tool in hand.

(Doc. 28-1, pgs. 8-9). The struggle to retrieve the tool was based on the impact wrench's placement. Miller placed the wrench "far enough away that [he] couldn't

reach it from the back," thus requiring that he climb into truck bed and maneuver around the buckets that he placed in front of the heavy impact wrench (Doc. 281-1, pg. 12). The decision regarding the impact wrench's placement was one that he made on his own.

> **Q:** It seems like if you have a heavy item like that you would want to keep it close access to the back of the truck.
> **Miller**: Right.
> **Q:** So how many feet in did you have this --
> **Miller**: Approximately two to three feet.
> **Q:** Okay. Two to three feet in. And was there anything on the bed of the truck in front of it?
> **Miller**: Yeah, spike buckets, some wrenches, and bolt buckets.
> …
> **Q:** Okay. So when you're lifting this up, are you having to step over these buckets?
> **Miller**: Yes.
> **Q:** Okay. And I'm not familiar with them. About how high off the bed of the truck are these buckets?
> **Miller**: These buckets are little blue buckets. They're about, say, 10 to 12 inches tall.
> **Q:** And how many of them are there?
> **Miller**: I had three in the back of the truck.

(Doc. 281-, pg. 12-13).

The Court appreciates the low bar for plaintiffs in FELA cases in terms of evidence of employer negligence to proceed to a jury. *Williams*, 161 F.3d 1059, 1061 (7th Cir. 1998), *Rogers v. Missouri Pac. R. Co.,* 352 U.S. 500, 506 (1957). But the bar has not been met here. The facts to not indicate a breach of Union Pacific's duty to provide its employees with a reasonably safe place to work. *Holbrook*, 414 F.3d at 742. Rather, the evidence demonstrates, and a reasonable jury would find, that plaintiff's own negligence was the sole cause of his injury, entitling Union Pacific to judgment.

## V. Conclusion

For the reasons stated above, the Court **GRANTS** defendant's motion for summary judgment. The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

Signed this 23rd day of January, 2017.

Digitally signed by Judge David R. Herndon
Date: 2017.01.23 16:20:22 -06'00'

**United States District Judge**